# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, a California non-profit corporation, | Case No. 2:24-cv-05206-MWC (PDx) |
| | **CONSENT DECREE** |
| Plaintiff, | |
| v. | **JS-6** |
| NORMAN, FOX & CO., a corporation, | |
| Defendant. | |

## CONSENT DECREE

**WHEREAS,** Plaintiff Communities for a Better Environment ("CBE" or "Plaintiff") is a non-profit 501(c)(3) environmental justice organization, organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** CBE is dedicated to empowering low-income communities of color that seek a voice in determining the health of their air, water, and land. For at least 30 years, CBE has sought to protect and promote water resources that are swimmable, drinkable, fishable, and sustainable;

**WHEREAS**, Defendant Norman, Fox & Co., ("Norman Fox" or "Defendant") owns and operates a facility at 5511 S Boyle Ave, under Waste Discharger Identification number 4 1I004956 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of unloading rail cars of chemicals, loading/unloading tank trucks of chemicals, blending and transfer of chemical raw materials, and equipment cleaning to develop, manufacture and distribute specialty chemicals. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2869 and 2899, covering "Industrial Organic Chemicals" and "Chemicals and Chemical Preparations";

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water

Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Plaintiff alleges Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on April 9, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, on June 20, 2024, CBE filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-05206-MWC (PDx) ("Complaint");

**WHEREAS**, on November 5, 2025, Plaintiff issued a supplementary notice of intent to file suit ("Supplementary 60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the EPA, State Board, Regional Board, the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River, Los Angeles River Estuary, and Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      CBE has standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.    OBJECTIVES

6.      It is the express purpose of the Settling Parties through this Consent Decree to resolve all issues alleged by CBE in its 60-Day Notice Letters and Complaint.  Plaintiff's objectives in filing this action include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

7.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s)

raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

8.    Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

9.    Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

10.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

b.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

c.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

d.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

e.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

f.    "MIP" means a Monitoring Implementation Plan.

g. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

h. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

i. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

j. "SWPPP" means a Storm Water Pollution Prevention Plan.

k. "Term" means the period between the Effective Date and the "Termination Date."

l. "Termination Date" means:

i. July 31, 2026, unless Defendant has failed to make all payments, implement all BMPs, and revise the SWPPP pursuant to this Consent Decree, in which case the Term shall continue until Defendant completes said requirements.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

11. Non-Storm Water Discharge Prohibition. Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

12. Current and Additional Best Management Practices. At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree, the General Permit, and the Clean Water Act.

13. Structural and Non-Structural BMPs for the Facility. As soon as possible but no later than thirty (45) days of the Effective Date, unless otherwise noted,

Defendant shall develop and implement the following BMPs at the Facility if that has not already been done:

    a.    Filtration socks (selected from the list attached hereto as **Exhibit A**) for the trench leading to **Storm Drain Outfall** #1, around **Storm Drain Outfall #2**, and around **Storm Drain Outfall #3** (as shown on **Exhibit B**).[2] The socks shall be weighed down or anchored to ensure maximum contact with storm water flows.  In lieu of placing filtration socks, comparable filters may be placed in the Storm Drain Outfalls.

    b.    Spill response procedures to immediately contain and clean oily spills, including in driveway areas.

    c.    Riding sweeper for the paved driveway and other accessible operational areas, to occur at least quarterly.

    d.    Cleaning of all trench drains to ensure removal of sand and debris and free flow of drains, to occur at least quarterly.

    e.    Pressure washing of all driveway areas that are in contact with stormwater that discharges off-site, to occur at least annually, or at least quarterly if initial water quality sampling after pressure washing does not indicate significant improvement.

    f.    Hydro-jetting of underground pipes that convey stormwater to remove accumulated sediment and pollutants, to occur at least annually, or at least quarterly if initial water quality sampling after hydro-jetting does not indicate significant improvement.

    g.    Cleaning of each catch basin by pressure washing and removing sediment and debris, to occur at least annually.

---

[2] Exhibit B is the Site Map on page 4 of the Facility's SWPPP effective December 2025, as annotated in yellow to more readily identify the locations of the trench leading to Storm Drain Outfall #1 and Storm Drain Outfalls #2 and #3.

14.    Confirmation of BMPs: Within sixty (60) days of the Effective Date Defendant shall provide confirmation of implementation of the BMPs set forth above in Paragraphs 13(a)-(g), to Plaintiff in writing, with digital photographs and/or sufficient documentation, that each of those BMPs has been implemented as set forth above.

15.    SWPPP Revisions.

    a.    Revising SWPPP. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to CBE within sixty (60) days of the Effective Date for CBE's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

    i.    Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree; and

    ii.    A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and storm water flows, accurately depicting the storm water discharge locations and sampling points, and location of the municipal storm drain inlet that receives the Facility's storm water discharges.

    iii.    An inspection and maintenance schedule for the filtration socks or filters specified above in Paragraph 13(a).

    b.    Review of Revised SWPPP.  CBE shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving CBE's comments and proposed changes to the SWPPP, Defendant shall

consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions into the revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**B.** **LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

16. <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial projects that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles River watershed, Defendant shall make a payment totaling Twenty-Five Thousand Dollars ($25,000.00) to the Rose Foundation for Communities and Environment ("Rose Foundation") made payable to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Jodene Isaacs. Payment shall be made by Defendant to the Rose Foundation within thirty (10) calendar days of the Entry Date. Defendant shall copy Plaintiff with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the Settling Parties within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

17. <u>CBE's Fees and Costs</u>. Defendant shall pay a total of Two Hundred Fourteen Thousand Dollars ($214,000) to CBE to reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, oversight, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Lozeau Drury LLP and delivered by

overnight carrier to Rebecca Davis, Lozeau Drury LLP, 1939 Harrison Street, Suite 150, Oakland, California 94612. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

## IV.    DISPUTE RESOLUTION

18.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

19.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 18, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

20.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised or could have been raised in the 60-Day Notice Letter, Supplementary 60-Day Notice Letter and/or the Complaint or at any point in time in this action based on the allegations in the 60-Day Notice Letter, Supplementary 60-Day Notice and/or the Complaint up to and including the end of the covenant not to sue period set forth below in Paragraph 21..

21.    <u>Covenant Not To Sue or Pursue Administrative Action</u>.  In further consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff,

on its own behalf and on behalf of its officers and directors, agrees not to commence any future legal action against Defendant relating to alleged violations of the Clean Water Act (33 U.S.C. § 1251, et seq.) for a period of three and one-half (3.5) years which shall begin on the Effective Date of this Consent Decree. Furthermore, Plaintiff, on its own behalf and on behalf of its officers and directors, agrees not advance, address or take any position in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act for a period of three and one-half (3.5) years which shall begin on the Effective Date of this Consent Decree.

22.     Knowing and Intentional Waiver of Rights.  To the extent it applies, Plaintiff, in agreeing to the release language above and after consulting with its counsel, knowingly and intentionally waives any rights or benefits it may otherwise have had under California Civil Code section 1452, and agrees that any potential future claims covered by the release language (including the Covenant Not To Sue) above would not have materially affected its decision to agree to the release language.

23.     Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, releases Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letters and/or the Complaint up to and including the Termination Date of this Consent Decree.

## VI.    MISCELLANEOUS PROVISIONS

24.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.

Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

25.    Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

26.    Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

27.    Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

28.    Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

29.    Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

30.    Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

31.    Choice of Law. The laws of the United States shall govern this Consent Decree.

32.     Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

33.     Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

34.     Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

35.     Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to

overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

36.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Communities for a Better Environment
Jennifer Ganata
6325 Pacific Blvd., Ste. 300
Email: jganata@cbecal.org
Phone: (323) 683-8844

With copies to:
Lozeau Drury LLP
Michael R. Lozeau
Douglas Chermak
1939 Harrison St., Suite 150
Oakland, CA 94612
Email: michael@lozeaudrury.com
Email: doug@lozeaudrury.com
Phone: (510) 836-4200

If to Defendant:
Norman Fox & Co.
Stephen Halpin
5511 S. Boyle Ave.
Vernon, CA 90058
Email: shalphin@norfoxchem.com
Phone: (323) 973-4900

With copies to:
Paul Hastings LLP
Christopher J. Carr
101 California Street, 48th Floor
San Francisco, CA 94111
Email: chriscarr@paulhastings.com
Phone: (415) 856-7000

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

37.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to

modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties have entered into this Consent Decree and submitted it to the Court for its approval and entry as a final judgment.  The Parties have provided valid signatures at Dkt. # 46 of the relevant case (2:24-cv-05206-MWC-PD).

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

**IT IS SO ORDERED.**

Dated: April 9, 2026

_____

Hon. Michelle Williams Court
United States District Judge

modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: __February 19__, 2026            By: _____
                                            Darryl Molina Sarmiento
                                            Executive Director
                                            Communities for a Better
                                            Environment

Dated: __FEB. 12th__, 2026              By: _____
                                            Stephen M. Halpin
                                            President
                                            Norman, Fox & Co.

APPROVED AS TO FORM

                                            LOZEAU DRURY LLP

Dated: __Feb. 19__, 2026                By: _____
                                            Douglas Chermak

15
[PROPOSED] CONSENT DECREE

Attorney for Plaintiff
Communities for a Better
Environment

PAUL HASTINGS LLP

Dated: Feb. 18 , 2026        By: _____
                                 Christopher J. Carr
                                 Attorney for Defendant
                                 Norman, Fox & Co.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: _____        CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE MICHELLE WILLIAMS
COURT
United States District Court Judge

16
[PROPOSED] CONSENT DECREE